FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

2013 FEB -5 PM 3: 57

| | |
|---|---|
| SAEILO, INC. d/b/a KAHR ARMS, a Delaware corporation, and KOOK JIN MOON, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> DIAMONDBACK CNC, LLC, a Florida limited liability company, PHILIP BRADLEY THOMAS and BOBBY VANCE FLECKINGER, <br><br> Defendants. | Civil Action No: 6:13-CV-198 ORL-36 PA3 |

## COMPLAINT

Plaintiffs, SAEILO, INC., d/b/a KAHR ARMS and KOOK JIN MOON, (collectively "Kahr") sue Defendants, DIAMONDBACK CNC, LLC, a Florida limited liability company, PHILIP BRADLEY THOMAS and BOBBY VANCE FLECKINGER, and state:

## COMMON ALLEGATIONS

1. Plaintiff, Saeilo, Inc., d/b/a Kahr Arms ("Saeilo"), is a Delaware corporation having its principal place of business in Massachusetts.

2. Plaintiff, Kook Jin Moon ("Moon"), is the owner and Saeilo, Inc. is the exclusive licensee of US patent no. 5,502,914 ("'914 patent") issued from U.S. Patent Application Serial No. 08/081,169, filed on June 25, 1993. A true and correct copy of the '914 patent is attached hereto as Exhibit "1."

3. The '914 patent pertains to Kahr's striker cocking and firing mechanism invented by Moon. In or about 1993 Moon set out to design and create a compact firearm, suitable for concealed carry, capable of effectively firing a 9 mm parabellum cartridge. The result of his efforts was initially the Kahr K9 which employed several novel features that are protected by six validly issued United States patents, including the '914 patent. Notably, the scope of the claims of the '914 patent is not limited in terms of the caliber of bullet fired.

4. The '914 patent is drawn to the rotating cam (i.e., sear) firing mechanism employed within the Kahr firearms, including the K9. A firearm covered by the '914 patent originates in a forward uncocked position with the striker disengaged from the cam. Rearward drawing of the firearm slide positions the cam and striker, whereby the cam maintains the striker in a position intermediate a full-cocked position and the un-cocked position. Pulling of the trigger initiates rotation of the cam, which in turn urges the striker further rearward to a fully-cocked position just prior to disengagement of the striker and the cam allowing the striker to move forward discharging the firearm.

5. The firing mechanism and element relationships embodied in the K9 firearm and covered by the '914 patent carry numerous advantages over prior firearms. At the time that the K9 was invented, the closest prior art full-size 9 mm firearms employed a hammer cocking mechanism or a transfer bar. The rotating motion of the cam mechanism results in a smoother trigger pull than in hammer cocking and transfer bar firearms. The cam firing mechanism also results in less wear with use than known firearms due to greater steel-on-steel surface contact. Because the weapon can only discharge via the cam initiated release at the fully-cocked position, the disengagement of the cam and striker also offers a unique safety element in that the firearm cannot be discharged without pulling the trigger.

6. The '914 patent is valid and is owned by Moon and exclusively licensed to Saeilo.

7. Diamondback CNC, LLC ("CNC") is a Florida limited liability company having its principal place of business in Brevard County, Florida within this division of the Middle District of Florida. CNC designed and manufactures substantially all component parts of a series of firearms variously designated the DB380, DB9 and DB320 (hereinafter "DB design firearms") sold and distributed by Diamondback Firearms, LLC, a separate Florida Limited Liability Company. The DB380 was the first of these firearms to be produced and distributed. The DB9 and DB320 followed thereafter. All of the DB design firearms employ the same cocking and releasing mechanism discussed hereinafter.

8. Defendant, Philip Bradley Thomas (hereinafter "Thomas"), is the engineer participating in the design of the Diamondback pistols and resides in this division of the Middle District of Florida. Upon information and belief he is the chief executive officer of Diamondback CNC and has at all times material hereto been employed by Diamondback CNC. Beginning in or about 2007 Thomas directed and was the primary participant in the design of the DB design firearms and all component parts thereof. Thomas prepared all CAD production drawings of the component parts of the firearms and oversaw the construction of all prototypes of the firearms.

9. Defendant, Bobby Vance Fleckinger (hereinafter "Fleckinger"), is the managing member of CNC overseeing its operations. Fleckinger participated directly in the design and production of the DB design firearms and, upon information and belief, all substantial decisions concerning the ultimate design and production of the firearms required his approval.

10. During the prototyping phase of the design of the DB380 Defendants became aware of the '914 patent and its likely application to the cocking and releasing mechanism

3

employed in the DB380. In an effort to design around the '914 patent Defendants created the "Zero-Energy Striker."

11. The "Zero-Energy Striker" firing system uses a rotating cam to cock and release the striker to discharge the firearm. Defendants attempted to differentiate this mechanism from that described in the '914 patent by designing the "Zero-Energy Striker" with a configuration that, theoretically provided for a "gap" between the striker leg and the cocking cam in the ready to fire position and with no striker spring tension acting on the striker so that it could be argued that the cocking cam did not "maintain" the striker in a half-cocked position as required by the '914 patent. However, this design condition was theoretical only inasmuch as there was no nominal dimension assigned to this "gap," no tolerance study was performed to determine the impact of production tolerance variances in various parts of the firearm on this "gap" and no examination of any of the production firearms was made to try to confirm or measure the gap.

11. CNC, under the supervision and direction of Thomas and Fleckinger, manufactures or acquires from vendors all component parts comprising the so-called zero energy striker system. Upon information and belief the DB designed firearms incorporating this zero-energy striker system designed and manufactured by Defendants infringe the '914 patent. Defendants are contributory infringers of the '914 patent under 35 U.S.C. §271(c) in that they have manufactured and sold by the receipt of consideration component parts constituting a material part of the invention encompassed in the '914 patent to Diamondback Firearms, LLC, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use.

12. Furthermore, upon information and belief, for some period of time Defendants may have engaged in the full assembly of the DB design weapons and transferred them to Diamondback Firearms for distribution and sale. In that case Defendants are direct infringers of the '914 patent under 35 U.S.C. §271(a)

13. Finally, Defendants are liable for inducing infringement under 35 U.S.C. §271(b). With knowledge of the '914 patent Defendants designed the DB designed firearms, manufactured or acquired all or substantially all component parts of the firearms and instructed the manner of their assembly in a fashion which they knew resulted in the direct infringement of the '914 patent by Diamondback Firearms, LLC.

14. The acts of infringement described above by Defendants were willful based on facts including, but not limited to, the following:

    a) Defendants concocted the "zero-energy striker" design without doing any actual testing or computations to verify the existence of the conditions they believed would avoid infringement of the '914 patent;

    b) In testing the performance of the DB380 prototypes Defendants were aware that the design produced "light strikes," the failure of the striker to impact the primer of the cartridge with sufficient force to detonate it thereby discharging the firearm;

    c) In order to address this performance issue Defendants changed the shape of the cocking cam and its degree of rotation so as to increase the travel of the striker rearward against the striker spring to impart more energy to the striker creating greater impact to the primer of the cartridge;

    d) As a result of these changes to the production specifications for the firearm, the DB380 went into production with no "gap" between the striker leg and the cocking

cam and, in fact, the striker was pressed back against the striker spring so that it had spring tension applied to it in the ready to fire or half-cocked position;

      e)      In January 2011, after Diamondback Firearms, LLC had received an inquiry concerning the possible infringement of the '914 patent from Kahr and Diamondback Firearms, LLC had filed a declaratory relief action against Kahr seeking a determination of non-infringement, Defendants made a change to the production specifications of the firearms calling for the position of containment of the striker spring inside the slide of the firearms to be moved rearward .030 (thirty thousandths) of an inch to theoretically eliminate contact between the striker leg and the cocking cam and remove the exertion of spring tension in the half-cocked or ready to fire position in an effort to make it appear that the zero-energy striker design was in use in production of the firearms;

      f)      However, the change in production specifications in January 2011 resulted in consumer complaints of "light strikes" as had been experienced in testing the prototypes and in or about January 2012 Defendants moved the position of containment of the striker spring forward .030 (thirty thousandths) of an inch thereby returning the production of the firearm to its original specifications.

15.    The actions described in paragraph 14 above were undertaken specifically with the intent to aid and abet, cause and attempt to conceal the direct infringement of the '914 patent.

16.    All conditions precedent to the bringing of this action have been satisfied or waived.

### COUNT I – CONTRIBUTORY INFRINGEMENT OF U.S. PATENT 5,502,914

17.    Kahr incorporates by reference paragraphs 1 - 16 above.

18. Defendants have contributed to the infringement of the '914 patent under 35 U.S.C. §271(c) in that they have manufactured and sold by the receipt of consideration component parts constituting a material part of the invention encompassed in the '914 patent to Diamondback Firearms, LLC, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use.

19. Upon information and belief, the infringing activities of Defendants described herein were engaged in without a justifiable belief that the relevant claims of the '914 patent were invalid or that the DB design firearms did not infringe those claims. Consequently, Defendants' contributory infringement should be deemed willful and Kahr is entitled to an award of exemplary damages, attorneys' fees and costs.

WHEREFORE, Kahr demands judgment against CNC, Thomas and Fleckinger as follows:

A. An award of compensatory damages under 35 U.S.C. §284 in an amount sufficient to fully compensate Kahr for the infringement of its patent rights;

B. An award of exemplary damages, attorneys' fees and costs under 35 U.S.C. §285; and,

C. Such other relief as the Court may deem just and proper.

## COUNT II – INDUCING INFRINGEMENT OF U.S. PATENT 5,502,914

20. Kahr incorporates by reference paragraphs 1 - 16 above.

21. Defendants have induced the infringement of the '914 patent under 35 U.S.C. §271(b) in that, with knowledge of the '914 patent, Defendants designed the DB designed firearms, manufactured or acquired all or substantially all component parts of the firearms and

instructed the manner of their assembly in a fashion which they knew would result in the direct infringement of the '914 patent by Diamondback Firearms, LLC.

22. Upon information and belief, the infringing activities of Defendants described herein were engaged in without a justifiable belief that the relevant claims of the '914 patent were invalid or that the DB design firearms did not infringe those claims. Consequently, Defendants' actions inducing infringement of the '914 patent should be deemed willful and Kahr is entitled to an award of exemplary damages, attorneys' fees and costs.

WHEREFORE, Kahr demands judgment against CNC, Thomas and Fleckinger as follows:

A. An award of compensatory damages under 35 U.S.C. §284 in an amount sufficient to fully compensate Kahr for the infringement of its patent rights;

B. An award of exemplary damages, attorneys' fees and costs under 35 U.S.C. §285; and,

C. Such other relief as the Court may deem just and proper.

## COUNT III – DIRECT INFRINGEMENT OF U.S. PATENT 5,502,914

23. Kahr incorporates by reference paragraphs 1 - 16 above.

24. Upon information and belief, for some period of time Defendants engaged in the full assembly of the DB design weapons and transferred them to Diamondback Firearms for distribution and sale. As such, Defendants are direct infringers of the '914 patent under 35 U.S.C. §271(a)

25. Upon information and belief, the infringing activities of Defendants described herein were engaged in without a justifiable belief that the relevant claims of the '914 patent were invalid or that the DB design firearms did not infringe those claims. Consequently,

Defendants' actions inducing infringement of the '914 patent should be deemed willful and Kahr is entitled to an award of exemplary damages, attorneys' fees and costs.

WHEREFORE, Kahr demands judgment against CNC, Thomas and Fleckinger as follows:

A.  An award of compensatory damages under 35 U.S.C. §284 in an amount sufficient to fully compensate Kahr for the infringement of its patent rights;

B.  An award of exemplary damages, attorneys' fees and costs under 35 U.S.C. §285; and,

C.  Such other relief as the Court may deem just and proper.

Dated this 5th day of February, 2013.

_____
DOUGLAS C. SPEARS
Florida Bar No.: 373801
JOHN R. STUMP
Florida Bar No. 377449
Swann Hadley Stump Dietrich & Spears, P.A.
1031 W. Morse Blvd., Suite 350
Winter Park, FL 32789
dspears@swannhadley.com
Telephone:   (407) 647-2777
Facsimile:   (407) 647-2157

Clifford P. Kelly
Alix, Yale & Ristas, LLP
750 Main Street, 14th Floor
Hartford, CT 06103-2721
ckelly@pctlaw.com
Telephone: (860) 527-9211
Facsimile: (860) 527-5029